DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Michael Wexelbaum
E-mail: mw@dmlegal.com
Larry Hutcher
E-mail: lkh@dmlegal.com
*Attorneys for Defendants*
*Magnify Inc., Premero Investments Ltd.,*
*Strand International Investments Ltd.,*
*The Yeshaya Horowitz Association,*
*Yair Green, Kurt Brunner, Osnat Dodelson,*
*and Express Enterprises Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | Case No. 09-11893 (BRL) |
| Debtor | |
| In Re: | |
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Adv. Pro. No. 10-05279 (BRL) |
| Plaintiff, | |
| v. | |

00427659.2



By Kurt Brunner    Pg 2 of 10

MAGNIFY INC., PREMERO INVESTMENTS  :
LTD., STRAND INTERNATIONAL  :
INVESTMENTS LTD., THE YESHAYA  :
HOROWITZ ASSOCIATION, YAIR GREEN,  :
KURT BRUNNER, OSNAT DODELSON,  :
SPECIAL SITUATIONS CAYMAN FUND LP,  :
EXPRESS ENTERPRISES INC., R.H. BOOK LLC  :
AND ROBERT H. BOOK,  :
:
                    Defendants.  :

## DECLARATION OF KURT BRUNNER
## IN SUPPORT OF MOTION TO DISMISS

**KURT BRUNNER** hereby declares under penalty of perjury:

### INTRODUCTION

1. I make this Declaration in support of the motion to dismiss the Complaint in the above-entitled adversary proceeding, and in particular, in support of the motion to dismiss that Complaint as against me personally.

2. I am fully familiar with the facts and circumstances hereinafter set forth.

### MY LACK OF CONTACTS WITH THE UNITED STATES

3. I am a resident, domiciliary and citizen of the nation of Switzerland.

4. I have never been a resident, domiciliary or citizen of the United States of America.

5. I have never been to the United States, either on business or on vacation.

6. I do not own any real property located in the United States, and have never owned any real property located in that jurisdiction.

7. I do not own any personal property located in the United States, and have never owned any personal property located in that jurisdiction.

00427659.2                                     2



8. I have never maintained any bank accounts, securities or brokerage accounts, or any other financial accounts in the United States.

9. I have never done business in the United States, and I have never owned any business enterprise doing business or conducting commercial activities in the United States or having assets located in the United States.

10. I was not a customer of Bernard L. Madoff Investments Securities or Bernard L. Madoff Investments Securities LLC (collectively "BLMIS"), and never maintained an account with BLMIS.

11. I never received any payments (a) from accounts maintained at BLMIS by those of the above-named Defendants who were customers of BLMIS, or (b) from accounts maintained at BLMIS by any other BLMIS customers.

12. Paragraph 43 of the Complaint correctly alleges that I reside in Switzerland and that my business address (which is for my law practice) is in Glarus, Switzerland. That paragraph of the Complaint also correctly alleges that I am a Director of and legal counsel to some of the other Defendants named in this proceeding. The details of those business relationships between me and those other Defendants are set forth in more detail below. However, Paragraph 43 alleges incorrectly that I am an officer and/or principal of those other Defendants. That is not the case, and I have no ownership or equity interest in any of the other Defendants.

13. Paragraph 50 of the Complaint alleges that I received correspondence from BLMIS with regard to the BLMIS accounts of the other Defendants who maintained accounts with BLMIS. As my law office address was the mailing address for the Defendant Magnify, Inc., I did on rare occasions receive correspondence for Magnify Inc. from BLMIS that was sent to my business address in Glarus, Switzerland. I submit that the mailing of correspondence by BLMIS from the

00427659.2                                3



United States to an accountholder's business address in Switzerland c/o my law office cannot possibly serve as a sufficient predicate for the imposition of *in personam* jurisdiction over me personally.

14. Paragraph 51 of the Complaint is an omnibus provision directed against all of the Defendants. To the extent that those allegations are intended to apply to me personally, they are patently false. I never received any funds from BLMIS in New York, and I never utilized any New York banks for any purpose, with respect to BLMIS or otherwise.

### BACKGROUND INFORMATION

15. I am an attorney duly licensed to practice law in Switzerland, am currently practicing law in Switzerland, as I have throughout my professional career now lasting several decades, and am and always have been in good standing as an attorney under the laws of Switzerland.

16. As is set forth in more detail below, contrary to the allegations of the Complaint in the above-entitled adversary proceeding, I never managed or supervised the BLMIS accounts of any of the other Defendants named in this proceeding.

17. Although I acted as an attorney for a man named Albert Igoin and rendered legal services for him in connection with the Defendant Magnify Inc., I was never responsible for the financial affairs, business operations or commercial activities of Magnify, Inc. and I never managed or supervised its bank accounts or securities/brokerage accounts, including but not limited to those accounts maintained by Magnify, Inc. with BLMIS.

18. As indicated below, in connection with the legal services that I rendered for several of the other Defendants named in this proceeding, I served as the Sole Director of those entities. Despite being designated as the Sole Director of the Defendants Magnify Inc., Premero Investments Ltd.,

00427659.2                                              4



Strand International Investments Ltd. and Express Enterprises Inc., I never left Switzerland in the performance of my duties and functions for those entities. In particular, I was never authorized or requested to manage or supervise the accounts maintained at BLMIS by any of those entities, and I never played any role in the management and supervision of those BLMIS accounts.

19. With respect to my being designated as the Sole Director of the aforesaid entities, this Court should be aware of the fact that it is not uncommon in Switzerland for attorneys to be designated to serve in that capacity for entities that are owned or controlled by their clients. Being the Sole Director of a company does not mean that you run the company or make business decisions for it. Rather, the holding of that title by the company's attorney is intended to facilitate the execution of legal documents on behalf of the entity, especially when the person in control lives in another country, as was the case with Albert Igoin.

20. To the best of my knowledge, information and belief, the BLMIS accounts of the Defendant Magnify Inc. were managed and supervised by Albert Igoin up until the time of his death on January 30, 1995, and after Mr. Igoin's demise, from mid-1995 or thereabouts, those accounts were managed and supervised by the Defendant Yair Green in accordance with instructions that had been provided to Mr. Green by Mr. Igoin before the latter's death. Mr. Green also managed and supervised the BLMIS account of the Defendant Strand International Investments Ltd., a subsidiary of Magnify Inc., in accordance with the instructions provided by Mr. Igoin's widow, Doris Deborah Igoin. Mr. Green is an attorney duly licensed to practice law in the State of Israel. It is my understanding and belief that Mr. Green has been practicing law in Israel ever since I first met him through Mr. Igoin on or about December 14, 1989, when Mr. Igoin introduced me to Mr. Green at my law offices in Switzerland.

00427659.2                    5



## MY INVOLVEMENT WITH THE DEFENDANT MAGNIFY INC.

21. Earlier in my legal career I worked for a law firm located in Zurich, Switzerland, and during the course of my employment with that firm I became professionally acquainted with Dr. Jacques Baschy of S.G. Warburg Bank, Zurich. After I subsequently opened my own law firm in Glarus, Switzerland in 1982, Dr. Baschy referred business to me.

22. In or about May 1983, Dr. Baschy asked me to organize a Panama company for a wealthy French client of his bank. That French client turned out to be Albert Igoin. The Panama entity that I founded for Mr. Igoin was the Defendant Magnify Inc. In connection with the formation of Magnify Inc., I met Mr. Igoin for the first time in Dr. Baschy's office in Zurich on or about June 28, 1983.

23. During that meeting on or about June 28, 1983, Mr. Igoin informed Dr. Baschy and me that he intended to use Magnify Inc. for purposes of investing with a man he identified as "Mr. Madoff," who turned out to be Bernard Madoff. Prior thereto, I had never heard of Bernard Madoff.

24. At that same meeting in June 1983, I was instructed that both Mr. Igoin's wife, Doris Deborah Igoin, and his daughter, Laurence Jeanne Igoin (married name Apfelbaum) were also authorized to give me instructions regarding Magnify Inc.

25. In pursuance of his intention to invest with Bernard Madoff through his newly-formed company, Magnify Inc., Mr. Igoin instructed me to implement the transfer of funds from his personal account with S.G. Warburg Bank, Zurich to Bernard Madoff for the account of Magnify Inc. Acting as Mr. Igoin's attorney and the attorney for Magnify Inc., I followed his instructions and arranged for the sum of $3,136,150.00 in U.S. Dollars to be transferred to a bank account of Bernard Madoff located at National Bank of North America, for the account of Magnify Inc. to be opened with Mr. Madoff's company. The transfer of those funds took place in or about July 1983.



At about that same time, a bank account for Magnify Inc. was opened at S.G. Warburg Bank, Zurich with Mr. Igoin's funds.

26. I participated in the aforesaid transfer of funds from Albert Igoin's personal account at S.G. Warburg Bank, Zurich to Bernard Madoff's company for the account of Magnify Inc. solely as Mr. Igoin's attorney in connection with Magnify Inc. All of my activities in that regard were conducted in Switzerland and from Switzerland. I had no contacts with the United States in connection therewith.

27. From that point of time forward, the accounts of Magnify Inc. at BLMIS were managed and supervised by Albert Igoin up until the time of his death. I played absolutely no part in the management or supervision thereof. Magnify Inc. was Mr. Igoin's company and he ran it as he saw fit.

28. Between the Summer of 1983 and the early Winter of 1989, I received one or two telephone calls a year from Albert Igoin, but did not see him during that period.

29. During that same timeframe, and continuing until in or about late 1994, approximately once a year I received statements of account with respect to Magnify Inc.'s account I-FN024 at BLMIS. Those statements of account were sent to my law office address in Glarus, Switzerland. Although my office served as the mailing address for those BLMIS statements of account, I never reviewed them, analyzed them or did anything of substance with them, as Albert Igoin was the one managing and supervising that BLMIS account on behalf of Magnify Inc. at that time.

30. Subsequent to 1994, I did not receive any further BLMIS statements of account with respect to that account of Magnify Inc. at BLMIS.

31. In addition, although I am now aware that Magnify Inc. had two accounts at BLMIS, one



bearing account number I-FN024 and the other bearing account number I-FN025, I never received, and never saw, any statements of account for Magnify Inc.'s account number I-FN025.

32. From the inception of my involvement with Albert Igoin and Magnify Inc. in or about June, 1983 to the date of Bernard Madoff's arrest, I never made any investment decisions for Magnify Inc., I never gave any instructions to Bernard Madoff or BLMIS regarding the accounts of Magnify Inc. maintained at BLMIS, and I never gave any instructions or made any decisions with respect to the withdrawal and/or disbursement of funds from Magnify Inc.'s accounts at BLMIS.

## MY INTRODUCTION TO YAIR GREEN

33. In or about December, 1989, Albert Igoin made an appointment to meet with me at my law office in Glarus, Switzerland. Mr. Igoin appeared for that meeting accompanied by Yair Green, whom he introduced as his Israeli lawyer.

34. At that meeting or at some point in time after that meeting, I was advised by Albert Igoin that upon his death, Yair Green was to be appointed to manage and supervise Magnify Inc.'s accounts with BLMIS. After Mr. Igoin passed away, Yair Green effectively served as the sole Managing Director of Magnify Inc. as of June 1995 or thereabouts.

35. In or about January 1999, Yair Green advised me that Bernard Madoff had told him that despite his having received oral instructions from Albert Igoin to the effect that Mr. Green was to manage and supervise Magnify Inc.'s accounts with BLMIS after Mr. Igoin's death, the Compliance Officer of BLMIS required a formal notice of appointment of Mr. Green as Managing Director of Magnify Inc. Thus, on or about January 11, 1999, I – as Sole Director of Magnify Inc. and pursuant to Mr. Igoin's instructions prior to his death – duly appointed Mr. Green as sole Managing Director of Magnify Inc. It is my understanding that from that point and continuing to the date of Bernard



Madoff's arrest, Yair Green was the person who managed and supervised Magnify Inc.'s accounts with BLMIS in accordance with Mr. Igoin's instructions to Mr. Green, and, in all likelihood, in accordance with similar instructions given to Bernard Madoff by Mr. Igoin, first, from mid-1995 and until January 1999 without a formal appointment, and from January 1999 and thereafter, by formal appointment. During that period of time, I was on occasion called upon to render legal services for Magnify Inc., and I did so. Those legal services had nothing to do with Magnify Inc.'s BLMIS accounts. I was not involved in overseeing those accounts at BLMIS in any way.

### MY INVOLVEMENT WITH PREMERO INVESTMENTS LTD., STRAND INTERNATIONAL INVESTMENTS LTD. AND EXPRESS ENTERPRISES INC.

36. Subsequent to my being introduced to Yair Green by Albert Igoin, as the result of that introduction I was called upon by Mr. Green to perform certain legal services for various entities, those entities being the Defendants Premero Investments Ltd., Strand International Investments Ltd. and Express Enterprises Ltd.

37. In pursuance of those legal engagements, I was appointed (a) as a Sole Director of Premero Investments Ltd. in or about July, 1993, (b) as a Sole Director of Strand International Investments Ltd. in or about September 1998, and (c) as a Sole Director of Express Enterprises Ltd. in or about October 1997. However, with respect to all three of those entities, I hereby aver:

    A. I had absolutely nothing to do with the financial affairs or business operations of those three companies;

    B. I had absolutely nothing to do with, and had no control over, the accounts with BLMIS maintained by Premero Investments Ltd. and Strand International Investments Ltd. (Express Enterprises Inc. did not have any accounts with BLMIS.)

00427659.2                                              9



C. I did not even know that Premero Investments Ltd. and Strand International Investments Ltd. maintained accounts at BLMIS;

D. I never received any payments from the accounts of Premero Investments Ltd. and Strand International Investments Ltd. at BLMIS;

E. I had nothing to do with the payments that were made to Express Enterprises Inc. from the BLMIS accounts of Magnify Inc. and Strand International Investments Ltd., and did not even know that such payments had been made; and

F. I never had any contacts with the United States in the performance of my legal duties on behalf of those three companies.

38. By reason of all of the foregoing, I respectfully submit that (a) I have never had any contacts with the United States that could possibly subject me to the personal jurisdiction of this Court, and (b) that it would be onerous and burdensome, and patently unfair and unjust, to compel me to litigate this matter in a nation in which I have never set foot, done business or conducted any business or commercial activities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**WHEREFORE**, I respectfully request that the motion to dismiss the Complaint as against me for a lack of *in personam* jurisdiction be granted in its entirety.

Executed on August 16, 2011

_____, Switzerland

_____
KURT BRUNNER