**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

In re:                                                                                      No. 08-01789 (BRL)

BERNARD L. MADOFF INVESTMENT                    SIPA LIQUIDATION
SECURITIES LLC,
                                                                                            (Substantively Consolidated)

                Debtor.

------------------------------------------------------------X

In re:

IRVING H. PICARD, TRUSTEE FOR THE
LIQUIDATION OF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,
                                                                                            Adv. Pro. No. 10-05279 (BRL)

                Plaintiff,

       v.

MAGNIFY INC., PREMERO INVESTMENTS
LTD., STRAND INTERNATIONAL
INVESTMENTS LTD., THE YESHAYA
HOROWITZ ASSOCIATION, YAIR GREEN,
KURT BRUNNER, SPECIAL SITUATIONS
CAYMAN FUND LP, EXPRESS
ENTERPRISES INC., R.H. BOOK LLC AND
ROBERT H. BOOK,

                Defendants.

------------------------------------------------------------X

APPEARANCES**:**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:   (212) 589-4200
Facsimile:    (212) 589-4201
<u>By</u>:   David J. Sheehan
      Tracy L. Cole
      Timothy S. Pfeifer
      M. Elizabeth Howe
      David M. McMillan

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Telephone:    (212) 557-7200
Facsimile:    (212) 286-1884
By:    Michael Wexelbaum
       Larry Hutcher

*Attorneys for Defendants Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner and Express Enterprises Inc.*

Before: Hon. Burton R. Lifland
         United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is the motion (the "Motion") of Kurt Brunner ("Brunner" or the "Defendant")[1] to dismiss the complaint of Irving H. Picard, Esq. (the "Trustee"), trustee for the substantively consolidated Securities Investor Protection Act ("SIPA") liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"), for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), incorporated herein by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b).

The instant Motion addresses whether Brunner, an attorney in Switzerland who has never set foot in the United States, is nevertheless subject to the personal jurisdiction of this Court, as he allegedly founded, controlled, and profited mightily from entities created for the sole purpose of investing with BLMIS in New York. Upon review of the papers and after oral argument, the Motion is denied without prejudice to refile after limited jurisdictional discovery.

---

[1] The Motion was originally brought on behalf of Osnat Dodelson as well. On June 7, 2012, however, she was dismissed from the above-captioned adversary proceeding without prejudice. *See* Notice of Voluntary Dismissal of Osnat Dodelson (Dkt. No. 93).

2

## **BACKGROUND**[2]

Only those facts pertinent to the instant Motion are addressed below.

### I. THE TRUSTEE'S COMPLAINT

On December 6, 2010, the Trustee filed a complaint, subsequently amended on September 21, 2011 (the "Complaint"), against Magnify Inc. ("Magnify"), Premero Investments Ltd. ("Premero"), Strand International Investments Ltd. ("Strand"), The Yeshaya Horowitz Association ("Yeshaya"), Yair Green ("Green"), Brunner, Dodelson, Special Situations Cayman Fund LP, Express Enterprises, Inc. ("Express"), Robert H. Book and R.H. Book LLC, individuals and entities that allegedly collectively received over $154 million in avoidable transfers from BLMIS, approximately $149 million of which consists of fictitious profits. *See* Compl., ¶ 3.

The Complaint centers around six BLMIS accounts held by Magnify, Premero, Strand and Yeshaya[3] (together, the "Accountholder Defendants"). With regard to those accounts, the Trustee alleges they "were almost entirely funded not by deposits by the defendants herein, but by Madoff's victims." Compl., ¶ 2. Specifically,

> Magnify redeemed at least $12,348,015 from its BLMIS accounts . . . $12,029,199 of which consisted of fictitious profits. Premero redeemed at least $3,152,836 from its BLMIS accounts . . . $1,352,888 of which consisted of fictitious profits. Strand redeemed at least $11,730,019 from its BLMIS account . . . $11,230,019 of which consisted of fictitious profits.

Compl., ¶¶ 4(a)-(d). These accounts were purportedly accorded special treatment by Madoff, as evidenced by (i) returns as great as 175% per year, (ii) trades backdated to years before the

---

[2] For a detailed background of the mechanics of the Ponzi scheme masterminded by Madoff and the events preceding the Trustee's complaint, see *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, 424 B.R. 122, 125-33 (Bankr. S.D.N.Y. 2010).

[3] The Trustee alleges that "Yeshaya redeemed at least $127,172,595 from its BLMIS account (No. 1FN037), $124,354,579 of which consisted of fictitious profits and all of which originated from Magnify's accounts." Compl., ¶ 4(d).

3

opening of the accounts themselves, and (iii) millions of dollars in withdrawals made before the accounts were even funded or opened. *See also* Compl., ¶ 2 ("The volume and timing of the 'profits' reflected in the accounts were dictated by Madoff and certain of the defendants herein, sometimes without even a pretense of a connection with securities trading activity."). The Accountholder Defendants nevertheless claim the BLMIS estate owes them more than 800 million dollars over and above the funds they have already withdrawn.[4] *See* Compl., ¶ 9.

According to the Trustee, "Green and/or Brunner exercised control" over the Accountholder Defendants' accounts. *See* Compl., ¶ 12. Further, "Green and Brunner had virtually unfettered discretion to manipulate the Accountholder Defendants' accounts," Compl. ¶ 6, and they "exploited their relationships with Madoff" to do so, Compl., ¶ 5. Allegedly taking advantage of that power, "Green and Brunner . . . funneled millions of dollars of other people's money . . . to themselves, their families, Yeshaya, other charitable institutions throughout Israel, and other individuals and entities being investigated by the Trustee around the world." Compl., ¶ 5.

### a. Specific Allegations Against Brunner

While the jurisdictional nexus between a Swiss attorney, a Panamanian and two BVI companies, and the United States is not readily apparent, the Trustee has set forth a number of specific allegations against Brunner that make it more so.

---

[4] The Accountholder Defendants allegedly invested $5.5 million of principal. *See* Compl., ¶ 9. The Trustee points out that, for their claims totaling more than 800 million dollars to be true, the Accountholder Defendants' combined accounts would need to have grown to more than 180 times their initial value in approximately 25 years, notwithstanding their significant withdrawals during that time period. *See id.*

4

### i. Magnify, Premero and Strand (the "Entities")

With respect to Magnify, the Trustee alleges that in 1983, Brunner co-founded this Panamanian company at the behest of his client, Albert Igoin ("Igoin")[5] for the purpose of investing with BLMIS and "funneled millions of dollars" to himself and his family through Magnify's accounts. *See* Compl., ¶¶ 5, 51(c), 55. Upon Igoin's instructions,[6] Brunner executed the initial transfer of $3,136,150 from Igoin's account to BLMIS in New York to fund Magnify's first BLMIS account (No. 1FN024) in July 1983. *See* Compl., ¶ 56. Magnify's second account (No. 1FN025) was opened on September 30, 1990 without any initial deposit of principal. *See* Compl., ¶ 75(a). Both of these accounts (i) were held in the name "Magnify Inc., Kurt Brunner Atty at Law," (ii) listed Brunner as the BLMIS account contact, and (iii) listed his law office in Glarus, Switzerland as the account address.[7] *See* Compl., ¶¶ 39, 51(c)–(d), 56–57, 78–81. As Magnify's BLMIS account contact, "Brunner regularly spoke with Igoin regarding Magnify, regularly received calls from Igoin, received correspondence from BLMIS containing portfolio information for Magnify's two BLMIS accounts, and rendered legal services on Magnify's behalf." Compl., ¶¶ 56, 57.

In addition, Magnify's articles of incorporation list Brunner as the President of the Board of Directors and his wife and son, Gertrude and Phillip Brunner, as the only other directors, although Brunner claims to be Magnify's "Sole Director."[8] *See* Compl., ¶ 39. In that capacity,

---

[5] According to the Trustee, Igoin was a senior manager at a bank in France when he met Madoff in 1978. Until his death in 1995, Igoin was allegedly a mentor to Madoff, involved in soliciting potential European clients for Madoff, and established a number of BLMIS accounts. *See* Compl., ¶ 54.

[6] Igoin's wife and daughter, Doris Igoin and Laurence Apfelbaum respectively, were also allegedly authorized to give instructions to Brunner regarding Magnify. *See* Compl., ¶ 55.

[7] At some point, BLMIS records reflect the address to which account statements were to be mailed simply as "Switzerland." *See* Compl., ¶ 39.

[8] Brunner claims that he was the Sole Director of Magnify; his wife and son were appointed only as Secretary and Treasurer without "the power to act as signatory for Magnify." Supplemental Declaration of Kurt Brunner in Support of Motion to Dismiss ("Brunner Supp. Decl.") (Dkt. No. 47), ¶ 11(a).

5

Brunner appointed Green[9] as Magnify's managing director, though Brunner continued to render legal services for Magnify thereafter. *See* Compl., ¶ 69. Green and/or Brunner are also alleged to be "the principals, officers, directors and/or counsel of all the Accountholder Defendants . . . which they operate for their benefit." Compl., ¶ 90. And in March 2009, Brunner signed, and Green submitted, two customer claims on behalf of Magnify (accounts 1FN024 and 1FN025). *See* Compl., ¶¶ 51(f), 117.

With respect to Premero and Strand, the Trustee alleges that they were founded by Brunner and Green in December 1992 and in September 1998 respectively, under British Virgin Islands ("BVI") law, for the purpose of funneling money out of BLMIS for their benefit, as well as the benefit of their family members and various offshore investment interests. *See* Compl., ¶¶ 40, 72, 73. Brunner served as the Sole Director of Premero and Strand. *See* Compl., ¶¶ 40, 41. In this capacity, Brunner authorized Green to open bank accounts in the United States in Strand's name. *See* Compl., ¶ 51(e). In addition, Brunner signed, and Green filed, two customer claims on behalf of Premero (accounts 1FN073 and 1FN097) and one customer claim on behalf of Strand (account 1FR051). *See* Compl., ¶¶ 118, 119.

### ii. Accounts and Account Activity

The Trustee argues that "at all relevant times, [Green and/or Brunner] directed the deposit and/or transfer of funds into and/or out of" the Entities' accounts. Compl., ¶ 45; *see also* Compl., ¶ 90 ("Green and/or Brunner not only directed and controlled Magnify, Strand, Premero, and Express, they also retained the beneficial use over all funds and assets of those entities, including their BLMIS Accounts."). Accordingly, the Trustee alleges that "Green and Brunner were aware or should have been aware that the activity in the BLMIS accounts of Magnify,

---

[9] The Trustee alleges that Green maintained close professional and social contact with Madoff since at least the mid-1990's. *See* Compl., ¶ 43. In addition, Green is alleged to be the co-founder and/or legal counsel to Yeshaya, a non-profit association registered with the Israeli Registrar of Associations on December 20, 1988. *See* Compl., ¶ 42.

6

Strand [and] Premero . . . was inconsistent with legitimate trading activity," as these accounts were rife with "indicia of irregularity." Compl., ¶ 74. These indicia included portfolio evaluations ("Portfolio Evaluations")[10] that lacked transactional details or "basic" account information, Compl., ¶¶ 78, 80, "implausibly high rates of return, errors in reported trade prices . . . backdating of trading and cash activity, and even backdating the opening of certain accounts to generate additional benefits for Defendants." Compl., ¶ 74.

Specifically, with respect to Magnify, even though Magnify's second account was opened without any initial deposit, its initial account statement, addressed to Brunner, reflected gains of more than $100 million based on a sale of MCI Communications stock purportedly occurring nearly four years before the account even existed. *See* Compl., ¶¶ 74, 75(a). In addition, Magnify's July 31, 1993 "re-created" account statement "contain[ed] backdated trades all the way back to January of 1993. Because these trades should have been included on the previous six monthly BLMIS statements . . . it is likely that . . . Brunner received the original statements reflecting no such transactions." Compl., ¶ 77; *see also* Compl., ¶ 76 ("Statements for Magnify's 1FN025 account are riddled with fictitious and backdated trading activity, of which Green and Brunner knew or should have known.").

Further, with respect to Premero, nearly $200,000 was withdrawn from one of its accounts three weeks before it received its initial funding of $99,980. *See* Compl., ¶ 75(c). Similarly, with respect to Strand, a transfer of $120,000 was made from the Strand account more

---

[10] The Trustee asserts that at some point after 1993, instead of account statements, BLMIS began sending the Portfolio Evaluations for certain accounts to Brunner and Green. *See* Compl., ¶ 78. These Evaluations were generated at six-month intervals rather than "the regular monthly or quarterly BLMIS statements." Compl., ¶ 79. In addition, they stated only the "total cash value and equity value of the accounts;" they did not "contain transaction details for any security allegedly bought or sold . . . such as trade dates, settlement dates and trade prices [or] basic information such as the amount of money deposited to or redeemed from the Accounts." Compl., ¶ 80.

7

than half a year *prior* to its receiving its initial funding of $10 million from Magnify's 1FN024 account. *See* Compl., ¶ 74(b).

Allegedly ignoring these indicia of irregularity, Brunner and Green exercised control over the Entities' accounts "to siphon money from BLMIS for the benefit of the Defendants, particularly Yeshaya, as well as their family members and various Israeli institutions." Compl., ¶¶ 90, 45.

In light of the above, the Trustee argues that Brunner should readily have expected to be subject to litigation in the United States involving Magnify, Premero and Strand's activities, particularly given that these activities were riddled with indicia of fraud over a period of decades.

### b. Brunner's Contra-Allegations

Brunner attempts to undermine the Trustee's allegations through his declarations, as well as those of Green, on at least two key fronts.  <u>First</u>, with respect to the degree to which Brunner controlled the Entities and their corresponding BLMIS accounts, Brunner alleges that he was not involved in the management or control of those entities, as he "was never in charge of or responsible for the financial affairs, business operations or commercial activities of any of the other named Defendants." Supplemental Declaration of Kurt Brunner in Support of Motion to Dismiss ("Brunner Suppl. Decl.") (Dkt. No. 47), Ex. 4, ¶ 13; *see also* Declaration of Kurt Brunner in Support of Motion to Dismiss ("Brunner Decl.") (Dkt. No. 32), ¶ 27 ("I played absolutely no part in the management or supervision [of Magnify]"); Brunner Decl., ¶ 37(A) ("I had absolutely nothing to do with the financial affairs or business operations of [Premero or Strand] . . . ."). Rather, Brunner suggests that his primary role in connection with the Entities was as legal counsel, and that being Sole Director involved nothing more than rendering legal services:

8

> [I]t is not uncommon in Switzerland for attorneys to be designated to serve in that capacity for entities that are owned or controlled by their clients. Being the Sole Director of a company does not mean that you run the company or make business decisions for it. Rather the holding of that title by the company's attorney is intended to facilitate the execution of legal documents on behalf of the entity, especially when the person in control lives in another country, as was the case with Albert Igoin.

Brunner Decl., ¶ 19; *see also* Brunner Suppl. Decl., ¶ 12 ("My serving as the 'Sole Director' of [the Entities] is part and parcel of, and pursuant to, my services as legal counsel to those entities."). Furthermore, Brunner denies that he played any role "in the decision making with respect to the alleged fraudulent transfers that are the subject of this proceeding." Reply Memorandum of Law In Support of Motion to Dismiss Adversary Complaint (Dkt. No. 57), pp. 6–7; *see also* Brunner Decl., ¶ 37(B) ("I had absolutely nothing to do with, and had no control over, the accounts with BLMIS maintained by [Premero and Strand].") Specifically, Brunner contends he "did not authorize or direct any of the withdrawals or transfers from the BLMIS accounts at issue . . . ." Brunner Decl., ¶ 7; Brunner Suppl. Decl., ¶ 13 ("I never gave or issued any direct or indirect instructions to make any payments whatsoever from the accounts maintained with BLMIS.").

Second, with respect to the degree to which Brunner profited from the Entities, Brunner emphasizes that, (i) he was not a customer of BLMIS; (ii) he "never received any funds from BLMIS in New York;" (iii) he "never received any payments (a) from accounts maintained at BLMIS by [the] Defendants who were customers of BLMIS, or (b) from accounts maintained at BLMIS by any other BLMIS customers," Brunner Decl., ¶¶ 10, 14, 11; and (iv) that "[t]he only payments [he] ever received from Magnify, Premero, Strand or Express were contractually agreed annual director's fees which were never paid from the BLMIS accounts of any of those entities which held BLMIS accounts," Brunner Suppl. Decl., ¶ 7; *see also* Reply Declaration of Yair Green in Support of Motion to Dismiss ("Green Reply Decl.") (Dkt. No. 56), ¶ 7 ("[N]one

9

of [Brunner's director's fees] were paid out of any of the accounts maintained at [BLMIS]. . . . [T]hose fees were paid to Brunner in Europe from European bank accounts."). Those director's fees purportedly "totaled the relatively nominal amount of between 800-3000 Swiss Francs per year." Green Reply Decl., ¶ 7.

Given these contra-allegations, Brunner contends that he lacks minimum contacts with New York and subjecting him to litigation there would offend traditional notions of fair play and substantial justice.

**STANDARD FOR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). To survive such a motion, a plaintiff must make a *prima facie* showing that personal jurisdiction exists, *see Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), which can be accomplished through "'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)).

A plaintiff seeking jurisdiction over a foreign defendant must demonstrate the defendant "has the requisite minimum contacts with the United States at large" to satisfy Fifth Amendment due process. *Cruisephone, Inc. v. Cruise Ships Catering & Servs., N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002); *see also Savage & Assocs., P.C. v. Banda 26, S.A. (In re Teligent, Inc.)*, Nos. 01-12974, *et al.*, 2004 WL 724945, at *4 n.11 (Bankr. S.D.N.Y.

10

Mar. 30, 2004); *North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 852–53 (Bankr. D. Ariz. 2002) ("[T]he Bankruptcy Rules effectively provide for worldwide service of process, limited only by the due process clause of the Fifth Amendment . . . which requires only that the defendant have the requisite minimum contacts with the United States, rather than with the forum state.") (internal quotations omitted). A reviewing court not only evaluates the "minimum contacts" of the foreign defendant, but also assures an exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987) (internal quotations omitted); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

The court can also take into consideration the contraveiling allegations of the defendant, who can rebut the "unsupported allegations" of the plaintiff, but only "with direct, highly specific testimonial evidence" that the plaintiff does not counter. *Schenker v. Assicurazioni Genereali S.p.A., Consol.*, No. 98-CIV-9186, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002); *see also Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*, No. 98-CIV-3128, 1999 WL 322658, at *1 (S.D.N.Y. May 20, 1999) (finding plaintiff can make a *prima facie* showing of personal jurisdiction "even when the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's prima facie case"); *Kulas v. Adachi*, No. 96-CIV-6674, 1997 WL 256957, at *2 (S.D.N.Y. May 16, 1997) ("[O]nce a plaintiff has alleged facts, which if proved would support jurisdiction, a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations. Rather, the defendant's moving papers must 'entirely refute the plaintiff's allegations.'").

The Trustee argues that the Complaint supports a finding of specific personal jurisdiction over Brunner. Specific jurisdiction exists where a foreign defendant "purposefully direct[s] his

11

activities at residents of the forum," and the underlying cause of action "arise[s] out of or relate[s] to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted). The defendant need not have physically entered the forum, *Burger King*, 471 U.S. at 476, but "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In addition, the Trustee relies on New York's long-arm statute to support a finding of personal jurisdiction over Brunner. NEW YORK CIVIL PROCEDURE LAW AND RULES § 302(a)(1). This statute permits a finding where the defendant "'purposely availed' himself of the benefits and protections of New York law, through business contacts with New York that are neither 'random' nor 'fortuitous'" and which "bear a 'substantial nexus' to [the plaintiff's] claims." *Ayyash v. Bank Al-Madina*, No. 04-CIV-9201, 2006 WL 587342, at *4 (S.D.N.Y. Mar. 9, 2006). And, "[t]o determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999); *see also Picard v. Elbaum*, 707 F. Supp. 144, 145 (S.D.N.Y. 1989) ("The fact that the non-domiciliary was never physically present in New York is not controlling.").

## DISCUSSION

The Trustee has made a sufficient start toward establishing jurisdiction. Although Brunner has set forth allegations to the contrary, the Court is left with a number of factual questions that must be resolved in order to determine whether personal jurisdiction exists over Brunner. Accordingly, the Court finds that limited jurisdictional discovery is appropriate at this stage of the proceeding.

12

This Court has "considerable discretion in determining how best to handle jurisdictional questions," *Best Van Lines, Inc. v. Walker*, No. 03-CIV-6585, 2004 WL 964009, at *3 (S.D.N.Y. May 5, 2004), and may permit a plaintiff to conduct "limited discovery with respect to the jurisdictional issue," *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (warning that "a court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction") (internal quotations omitted). Such discovery "is appropriate where the plaintiff has made a *sufficient start* toward establishing jurisdiction and where it would not be a 'fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper.'" *Ivoclar Vivadent, Inc. v. Ultident, Inc.*, No. 04-CIV-0984, 2005 WL 1421805, at *5 (W.D.N.Y. June 15, 2005) (citations omitted) (emphasis added); *Alicea v. Lasar Mfg. Co.*, No. 91-CIV-3929, 1992 WL 230203, at *2, (S.D.N.Y. Aug. 31, 1992); *see also Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994) (indicating plaintiff must "make a threshold showing of jurisdiction and establish that their position is not frivolous"). This discovery is typically "permitted where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge." *Winston & Strawn v. Dong Won Secs. Co.*, No. 02-CIV-0183, 2002 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.4 (2d Cir. 1977)).

**a.  The Trustee Has Made a Sufficient Start Towards Establishing Jurisdiction**

This Court, in its "considerable discretion," finds that the Trustee has made a sufficient start toward establishing that personal jurisdiction exists over Brunner. Although courts have deemed certain facts relevant in determining whether personal jurisdiction exists, these facts "should not be examined separately or in isolation." *Nelson v. Mass. Gen. Hosp.*, No. 04-CIV-

13

5382, 2007 WL 2781241, at *15 (S.D.N.Y. Sept. 20, 2007) (*quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996)). Rather, "courts should assess the defendant's contacts as a whole," as "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state." *Id.*

Here, the Trustee has set forth an array of allegations against Brunner in the Complaint to show that he greatly profited from entities that he founded and controlled for the sole purpose of investing with BLMIS in New York. Specifically, the Trustee has alleged that in order to "funnel millions of dollars" to himself and others, Brunner created, maintained and controlled the Entities whose sole purpose was to invest in BLMIS in New York. *See* Compl., ¶¶ 5, 8, 40, 51(c), 72, 73, 75(a)–(b). These Entities had ongoing accounts with BLMIS since the 1990s. *See* Compl., ¶¶ 75(a)–(c). Brunner served as the Sole Director of the Entities and signed customer claims for each of them in this New York-based SIPA proceeding. *See* Compl., ¶¶ 39-41, 56, 57, 117, 118, 119. With respect to Magnify, Brunner also served as its President, while his wife and son acted as the other directors. *See* Compl., ¶ 39. Further, he executed the initial transfer of $3,136,150 to fund Magnify's first BLMIS account, *see* Compl., ¶ 56, which was titled "Magnify, Inc., *Kurt Brunner Atty at Law*." Compl., ¶ 39 (emphasis added). In addition, Brunner formally appointed Green as Magnify's "Managing Director" to permit him "to continue to manage and supervise Magnify's BLMIS accounts." Compl., ¶ 69. Finally, he served as Magnify's BLMIS account contact for over a decade. *See* Compl., ¶¶ 39–41, 56, 57. In that capacity, he received BLMIS account statements that reflected improbably high rates of return, inaccurate trade prices, and backdated trades, *see* Compl., ¶ 74, and eventually received only Portfolio Evaluations without the most basic account information regarding trades and cash activity, *see* Compl., ¶¶ 74, 80.

14

In light of the above, the Court finds that the Trustee's allegations are not merely a "fishing expedition" but rather constitute a sufficient start towards establishing personal jurisdiction over Brunner.

### b. Despite Brunner's Contra-Allegations, Questions Remain That Must Be Answered to Determine Whether Personal Jurisdiction Exists

The declarations submitted to the Court on behalf of Brunner to rebut the Trustee's allegations contain a number of discrepancies, leaving questions that must be resolved in order to determine whether personal jurisdiction exists over Brunner. *See Wafios Mach. Corp. v. Nucoil Indus. Co.,* No. 03-CIV-9865, 2004 WL 1627168, at *5 (S.D.N.Y. July 21, 2004) (granting jurisdictional discovery over a defendant because the defendant's affidavit left "further questions . . . which may be necessary to establish . . . personal jurisdiction"); *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 73 (E.D.N.Y. 2006) (granting jurisdictional discovery in part because, "rather than conclusively refuting plaintiffs' allegations, many of [the defendant's] assertions merely raise more questions regarding the significance of [the defendant's] activities in New York."). For example, compare Brunner's claims that he acted exclusively in a legal capacity with respect to the Entities, *see* Brunner Decl., ¶ 19, with his statements that suggest that he had corporate authority and control over the Entities and their BLMIS accounts, such as: (i) neither of Magnify's other Directors had the power to act as its signatory, *see* Brunner Suppl. Decl., ¶ 11(A); (ii) he appointed Green as Magnify's Managing Director, *see* Brunner Decl., ¶ 35; (iii) he "was required to provide Board decisions according to which Strand could operate, among which was the authority to utilize banking institutions in the United States"; (iv) he "expressly authorized Green to open bank accounts in the United States in [Strand's] name," Brunner Suppl. Decl., ¶ 11(C); and (v) he implemented the transfer to fund Magnify's initial BLMIS account, *see* Brunner Decl., ¶ 25. Further, compare Brunner's assertion

15

that the "allegation [that I co-founded Magnify] is patently untrue," Brunner Suppl. Decl., ¶ 9, with his averring that "[t]he Panama entity that *I founded* for Mr. Igoin was the Defendant Magnify Inc," Brunner Decl., ¶ 22 (emphasis added). Finally, given that Brunner acknowledges that Magnify was funded by a direct deposit into BLMIS and formed solely for the purpose of investing in BLMIS, *see* Brunner Decl., ¶¶ 22, 25, compare Brunner's admission that he received "contractually agreed annual director's fees" from Magnify with his claim that he never received any payments "either directly or indirectly" from Magnify, *see* Brunner Suppl. Decl., ¶ 7.

These discrepancies render unclear the degree to which Brunner controlled and profited from the Entities and their accounts—issues the resolution of which will inform this Court's jurisdictional calculus regarding Brunner. *See Kinetic Instruments*, 802 F. Supp. at 988 (denying motion to dismiss and granting jurisdictional discovery since it would "shed light on such issues as the defendant's control over the corporation and his alleged manipulation of corporate assets"); *Stratagem*, 153 F.R.D. at 547–48 ("Further discovery may elucidate the degree of control WGS exercised over WGS-NY during the relevant time period."); *see also Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005) (finding the plaintiff had made a sufficient start toward establishing personal jurisdiction even though, "[b]ased on the documents before the court, the precise nature of the relationship" between the defendant and two of its subsidiaries was "unclear"); *Ayyash*, 2006 WL 587342 at *6 (jurisdictional discovery warranted where it could identify additional U.S. transactions in which the defendant was involved).

Accordingly, jurisdictional discovery is warranted, as it would elucidate these issues and likely provide the Trustee with documents to review that are currently exclusively within Brunner's control. *See Uebler v. Boss Media*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005) ("To

16

permit discovery in this case is bolstered by the fact that the facts necessary to establish personal jurisdiction lie within [defendant's] exclusive knowledge."); *Wafios*, 2004 WL 1627168 at *5.

## CONCLUSION

For the reasons stated above, the Trustee's request for jurisdictional discovery is granted, limited to development and illumination of the Trustee's allegations regarding the degree to which Brunner controlled and profited from Magnify, Premero and Strand.  This discovery is to be completed no later than 60 days from the entry of this memorandum decision and order. Failure to submit to such discovery will result in the denial of the Motion with prejudice. Accordingly, the Motion is DENIED with leave to renew following limited jurisdictional discovery.

**IT IS SO ORDERED.**

Dated: New York, New York
       June 15, 2012

                                        /s/ Burton R. Lifland
                                        United States Bankruptcy Judge